.UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOY RENEE GLOVER, | ) | Case No. 4:25-cv-337 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge Darrell A. Clay |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**OPINION AND ORDER**

The Commissioner of Social Security denied Plaintiff Joy Renee Glover's application for Disability Insurance Benefits and Supplemental Security Income. Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of that decision. For the reasons that follow, the Court **AFFIRMS** the Commissioner's denial of Plaintiff's application for disability benefits.

**FACTUAL AND PROCEDURAL BACKGROUND**

Ms. Glover resides in Youngstown, Ohio. (ECF No. 1, PageID #1.) She graduated from high school and earned an associate degree in computerized office technology. (ECF No. 8, PageID #648.) She worked part-time as a pizza delivery driver. (*Id.*, PageID #59.) She reported that she occasionally travels by plane to visit family in Florida. (*Id.*, PageID #57.) She also reported traveling to Nevada. (*Id.*, PageID #66.) She lives with her school age daughter who was eight years old in December 2023 and for whom she is the primary caregiver. (*Id.*, PageID #55.) She

also lives with her adult daughter who was 20 years old in December 2023. (*Id.*, PageID #55.)

In January 2018, Ms. Glover began receiving outpatient treatment at Valley Counseling Services. (*Id.*, PageID #59.) In February 2022, Michael Billock, a psychiatric nurse practitioner, diagnosed her with bipolar I disorder and attention deficit hyperactivity disorder. (*Id.*, PageID #580.) In March 2022, she underwent a sleep study under Michael Lileas, D.O. (*Id.*, PageID #396.) He concluded that a repeat study was required, and Ms. Glover underwent a second sleep study in April 2022, which showed "no clinically significant OSA [obstructive sleep apnea] or hypoxia." (*Id.*, PageID #396 & #403.) Dr. Lileas noted that Ms. Glover may have hypersomnia or narcolepsy but difficulty sleeping may be related to Adderall. (*Id.*, PageID #403.)

On February 20, 2022, Ms. Glover applied for Disability Insurance Benefits and Supplemental Security Income. (*Id.*, PageID #50.) She claimed that she became disabled on January 5, 2021, when she was 36 years old, and identified the following allegedly disabling conditions: bipolar disorder, depression, anxiety, and attention deficit hyperactivity disorder. (*Id.*; *see also id.*, PageID #233 & #268.) She cited post-traumatic stress disorder and hyposomnia as additional allegedly disabling conditions. (*Id.*, PageID #53.) She also claimed that she experienced panic attacks, narcolepsy, memory issues, and alopecia. (*Id.*, PageID #268.) The administrative law judge accepted the agency's assignment of a potential onset date of January 1, 2019. (*Id.*, PageID #51.)

### A.    Application for Benefits (February 20, 2022)

In Ms. Glover's function report, she stated that she can feed herself, prepare simple meals, mow the lawn, do laundry tasks, drive in the community, manage finances, and shop for groceries.  (*Id., PageID #55.*)  Her primary care doctor, Daniel Miller, M.D., listed her medical problems as anxiety, fatigue, insomnia, and vitamin B12 deficiency.  (*Id.*, PageID #914.)  He prescribed vitamin B12 injections for fatigue.  (*Id.*)

### B.    Procedural History

On August 19, 2022, Ms. Glover's claims were denied.  (ECF No. 8, PageID #50.)  Ms. Glover filed for reconsideration.  (*Id.*, PageID #50.)

While that application was pending, in late 2022, Ms. Glover began seeing a licensed professional counselor, Susan Bancroft.  (*Id.*, PageID #63.)  In April 2023, Ms. Glover underwent a psychological evaluation with Kenneth Gruenfeld, Psy.D.  (*Id.*)  During this evaluation, Ms. Glover reported experiencing the following physical and mental conditions:

> constant worrying, increased anxiety when leaving the house or generally being around people, having several panic attacks per week lasting 5 to 15 minutes and associated with shortness of breath, lacking focus and distractibility of attention, and extreme depression status of not getting out of bed most days from feeling sad and "useless," lacking motivation to do anything, and anhedonia.

(*Id.*)  Dr. Gruenfeld diagnosed Ms. Glover with generalized anxiety disorder and major depressive disorder.  (*Id.*, PageID #651.)

On May 18, 2023, her claim was denied on reconsideration.  (*Id.,* PageID #50.)  Ms. Glover filed a request for a hearing in front of an administrative law judge, which

was held on December 18, 2023. (*Id.*) At the hearing, Ms. Glover was represented by counsel and testified. (*Id.*) An impartial vocational expert also testified. (*Id.*)

Before the hearing was held, from September 2023 to October 2023, Rajendra Koirala, M.D. treated Ms. Glover with ketamine at Restore Compassionate Care. (*Id.*, PageID #64.) Dr. Koirala noted that Ms. Glover showed signs of anxiety but no hyperactive or attentional difficulties. (*Id.*, PageID #65.) At that time, Ms. Glover's mental health medications included klonopin, Adderall, and bupropion. (*Id.*, PageID #886.) Ms. Glover's medication history has also included Trintellix, Prozac, Lexapro, Pristiq, Zenzedi, Xanax, and Rexulti. (*Id.*)

## C. Evidence at the Hearing

In making his determination, the ALJ considered evidence from medical and mental health professionals, as well as evidence from Ms. Glover and a vocational expert. As relevant here, that evidence includes the following.

### C.1. Giovanna Vinci-Khoury, M.D.

Dr. Vinci-Khoury treated Ms. Glover from 2018 to 2020. (*Id.*, PageID #61.) The ALJ determined that the treatment Ms. Glover received from Dr. Vinci-Khoury

> is not supportive of [a] serious degree of residual ADHD-related, anxiety-related, depressive, or bipolar-related symptoms with a largely stable regimen, as her mental status examinations otherwise continually reflect unremarkable features including average demeanor, good eye contact, good appearance and grooming, intact attention/concentration, intact recent and remote memory, normal judgment and insight, normal range of appropriate affect and, at times hesitant or pressured, normal rate of speech.

4

(*Id.*, PageID #61.)  Dr. Vinci-Khoury described Ms. Glover's bipolar and anxiety as mild.  (*Id.*)  The ALJ reviewed and considered all of the progress notes from Dr. Vinci-Khoury's office for the three-year period during which she treated Ms. Glover.  (*Id.*)

### C.2.    Cynthia Paschal-Pullium, N.P.

In January 2021, Cynthia Paschal-Pullium, a nurse practitioner in psychiatry at Valley Counseling, began treating Ms. Glover.  (*Id.*)  Medical evidence from the first half of 2021 is consistent with anxiety, depression, and attention deficit hyperactivity disorder.  (*Id.*, PageID #62.)  However, these symptoms improved after Ms. Glover started taking Rexulti, which she was prescribed before March 2021 but did not begin taking until August 2021.  (*Id.*)  Paschal-Pullium did not document any reports of panic attacks or problems with getting out of bed during 2021 and Klonopin was discontinued in late 2021.  (*Id.*)

### C.3.    Michael Billock, N.P.

In February 2022, Ms. Glover's care was transferred to another nurse practitioner, Michael Billock.  (*Id.*)  At this time, Ms. Glover experienced an increase in symptoms of anxiety.  (*Id.*)  Billock adjusted Ms. Glover's medication, but she reported sleeping a lot and lacking energy on follow up.  (*Id.*)  He adjusted her medication again, but Ms. Glover tragically found her boyfriend dead in her home before he could determine the efficacy of that adjustment.  (*Id.*)  Billock documented that Ms. Glover was tearful and adjusted her medication.  (*Id.*, PageID #62–63.)

The ALJ explained that, at this time, Ms. Glover's affect was "congruent with reasonably increased anxiety and depression and some early onset symptoms of later diagnosed PTSD."  (*Id.*, PageID #63.)  Ms. Glover reported improvement in symptoms

after an additional medication change.  (*Id.*)  His progress notes do not mention panic attacks.  (*Id.*)

### C.4.   Susan Bancroft, L.P.C.C.-S.

In November 2022, shortly after the death of her grandmother, Ms. Glover began counseling sessions with Susan Bancroft, a licensed professional clinical counselor-supervisor.  (*Id.*)  Bancroft's notes are significant because they document Ms. Glover's inconsistent comopliance with taking medication as prescribed and her lack of reported panic attacks.  (*Id.*)

### C.5.   Daniel Miller, M.D.

Dr. Miller's notes document that Ms. Glover has vitamin D and vitamin B12 deficiencies.  (*Id.*, PageID #920.)  Dr. Miller prescribed vitamin D.  (*Id.*, PageID #632.)  Ms. Glover received a vitamin B12 injection, but because of her ongoing complaints of daytime fatigue, Dr. Miller ordered a sleep study.  (*Id.*, PageID #60.)  Then, he ordered vitamin B12 injections every two weeks for two months to treat fatigue as well as a repeat of the sleep study.  (*Id.*, PageID #125.)

### C.6.   Southwoods Sleep Centers and Dr. Lileas

On March 21, 2022, Ms. Glover underwent a sleep study with Michael Lileas, D.O.  (*Id.*, PageID #396.)  Dr. Lileas found no clinically significant obstructive sleep apnea or hypoxia.  (*Id.*)  He recommended that Mr. Glover undergo another sleep study, which occurred on April 24, 2022.  (*Id.*, PageID #396 & #403.)  Dr. Lileas again found no clinically significant obstructive sleep apnea or hypoxia but noted that Adderall might cause sleep disturbances.  (*Id.*, PageID #403.)  No medical professional made a record of hypersomnia.  (*Id.*, PageID #54.)

6

### C.7.    Kenneth A. Gruenfeld, Psy. D.

On April 5, 2023, Ms. Glover was assessed by Kenneth Gruenfeld, Psy.D.  (*Id.*, PageID #647.)   During this assessment, she reported problems with depression, anxiety, problems sleeping, lack of focus, distraction, and forgetfulness.  (*Id.*, PageID #648.)  She reported having panic attacks that last five to fifteen minutes and that she rarely socializes with others, but also that she can complete basic household chores.  (*Id.*, PageID #649.)

Dr. Gruenfeld reported that Ms. Glover appeared "alert, well groomed, and maintained appropriate hygiene"; she "maintained appropriate eye contact"; had "normal speech"; "answered all examiner questions, consistently remained on topic, elaborated when requested, and didn't need questions repeated to her"; and had "appropriate" mood and affect.  (*Id.*)  Dr. Gruenfeld reported that Ms. Glover did not appear nervous and that she did not report anxiety at the time of the assessment.  (*Id.*, PageID #650.)  He diagnosed her with major depressive disorder, single episode, moderate, and with generalized anxiety disorder.  (*Id.*, PageID #651.)

### C.8.    Dr. Rajendra Koirala, M.D.

In September 2023, Dr. Rajendra Koirala conducted an initial evaluation of Ms. Glover.  (*Id.*, PageID #65.)   In October 2023, Dr. Koirala began treating Ms. Glover with ketamine.  (*Id.*)  Ms. Glover received multiple ketamine treatments in October 2023.  (*Id.*, PageID #898–910.)  Dr. Koirala's examination notes from October 25, 2023 state:

> Ms. Glover presents as calm, attentive, and relaxed.  She exhibits speech that is normal in rate, volume, and articulation and is coherent and spontaneous.  Language skills are intact.  Mood

presents as normal with no signs of either depression or mood elevation. Associations are intact and logical. There are no apparent signs of hallucinations, delusions, bizarre behaviors, or other indicators of psychotic process. Associations are intact, thinking is logical, and thought content appears appropriate. Suicidal ideas or intent are denied. Homicidal ideas or intentions are denied. Cognitive functioning and fund of knowledge are intact and age appropriate. Short- and long-term memory are intact, as is ability to abstract and do arithmetic calculations. This patient is fully oriented. Vocabulary and fund of knowledge indicate cognitive functioning in the normal range. Insight into problems appears normal. Judgment appears intact. There are signs of anxiety. There are no signs of hyperactive or attentional difficulties. Ms. Glover's behavior in the session was cooperative and attentive with no gross behavioral abnormalities. No signs of withdrawal or intoxication are in evidence.

(*Id.*, PageID #910–11.)

### C.9.   Gene J. Burkhammer, Vocational Expert

At the hearing on December 18, 2023, the ALJ elicited testimony by telephone from Gene J. Burkhammer, a vocational expert. (*Id.*, PageID #50.)  Burkhammer testified that there are unskilled occupations that an individual with Ms. Glover's residual functional capacity would be able to perform, including "housekeeping cleaner," "garment sorter," and "office helper". (*Id.*, PageID #71.)  Based on Burkhammer's testimony, the ALJ found that Ms. Glover "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (*Id.*, PageID #72.)

### C.10.  Ms. Glover

In her written responses to the function report, Ms. Glover stated that she did not need reminders from others to take prescribed medications; that she can feed herself and prepare simple meals; mow the lawn; do laundry; drive in her community;

manage finances; and shop for groceries.  (*Id.*, PageID #55.)  On December 18, 2023, she testified that her "anxiety increases when she is in public and that she has mood swings, a short temper, and becomes 'mean.'"  (*Id.*)  Also, Ms. Glover testified that she has scattered thoughts and difficulty concentrating and that anxiety affects her sleep.  (*Id.*, PageID #56 & #59.)

### D.    ALJ's Determinations

On January 18, 2024, the ALJ found that Ms. Glover was not disabled.  (*Id.*, PageID #51.)  "[A]fter careful consideration of the entire record," including reviewing the information from Ms. Glover's providers, the ALJ determined that Ms. Glover was not disabled.  (*Id.*, PageID #52.)  The ALJ "considered all the claimant's medically determinable impairments."  (*Id.*, PageID #54.)  The ALJ noted that Ms. Glover's psychiatrists continually reported observing intact short-term and long-term memory.  (*Id.*, PageID #55.)  As recently as 2023, Ms. Glover's psychiatrist documented "intact appearing fund of knowledge and abilities for abstraction and arithmetic calculations" as well as a "clinically estimated normal range of cognitive functioning."  (*Id.*)  The therapy notes from Valley Counseling show Ms. Glover's "increased engagement with supportive others, attending grief counseling, and observations of smiling, laughing, displaying positive emotions with a pleasant demeanor."  (*Id.*, PageID #56.)

The ALJ stated that Dr. Koirala's notes from Ms. Glover's initial ketamine treatment indicate "vague signs of anxiety" but "no hyperactive issues, and instead a calm, relaxed demeanor with appropriate affect and normal rate and volume of speech."  (*Id.*, PageID #65.)  His later notes from October 2023 suggest stable mental

9

status and reported improvement of symptoms. (*Id.*) The ALJ found that the evidence in the record was not consistent with a disabling mental health condition:

> the most recent medical evidence in the record is not very consistent with the testimony regarding persistence of extreme depression with not getting out of bed most days, feeling without energy to do much of anything, and other symptoms most reasonably attributable to her medically determinable mental impairments.

(*Id.*)

The ALJ described Dr. Gruenfeld's clinical report of Ms. Glover's condition "entirely unremarkable". (*Id.*, PageID #63.) Dr. Gruenfeld's report documents that Ms. Glover struggled with anxiety but explicitly noted that "Ms. Glover denied experiencing current anxiety at the time of interacting with him[.]" (*Id.*, PageID #64.) His clinical observations noted "a polite and respectful demeanor, no conflict or arguing and not speaking in an aggressive or rude tone when answering questions[.]" (*Id.*) The ALJ found that Dr. Gruenfeld's findings "are simply not consistent with the rather extreme degree of presented severity of depression and anxiety symptoms" that Ms. Glover reported, "including panic attacks not documented for years or concurrently in the psychiatric treatment setting." (*Id.*)

The Appeals Council denied Ms. Glover's request for review (*id.*, PageID #34), which made the ALJ's decision final and appealable. Accordingly, as the Commissioner notes, Ms. Glover exhausted her administrative remedies. (ECF No. 12, PageID #944.) Ms. Glover sought judicial review. (ECF No. 1.) She maintains that "[t]he ALJ failed to properly evaluate the medical opinion of consultative examiner Kenneth Gruenfeld, Psy.D." (ECF No. 10, PageID #931.)

10

## ANALYSIS

Under 42 U.S.C. § 405(g), the findings of an administrative law judge are conclusive if substantial evidence supports them.  Therefore, the Court limits its review to determining whether substantial evidence in the record supports the Commissioner's decision and to reviewing any claimed legal errors de novo.  *Wright v. Massanari*, 321 F.3d 611, 614–15 (6th 2003).  "Substantial evidence" is more than a scintilla, but less than a preponderance.  *Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  Substantial evidence is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.*  If substantial evidence supports the Commissioner's findings, then the Court accepts them as conclusive, even if it would have reached a different outcome on the same facts.  42 U.S.C. § 405(g).

In her sole argument, Plaintiff argues that "the ALJ failed to properly evaluate the medical opinion of consultative examiner Kenneth Gruenfeld, Psy. D." (ECF No. 10, PageID #931.)  In support of this position, Plaintiff takes issue with the ALJ's decision regarding substantial evidence, persuasiveness, supportability and consistency factors, and inadequate analysis of collateral medical evidence.  The Court addresses each in turn.

## I.    Substantial Evidence

Plaintiff argues that the "ALJ's mental RFC [residual functional capacity] determination is faulty because his evaluation of Dr. Gruenfeld's opinion is not supported by substantial evidence." (*Id.*, PageID #937–38.)  However, the ALJ based his evaluation of Dr. Gruenfeld's opinion on evidence prepared by other professionals,

information from Ms. Glover, and the contents of Dr. Gruenfeld's opinion itself.  The ALJ reviewed and considered evidence from Dr. Vinci-Khoury; nurse practitioners Paschal-Pullium and Billock; licensed professional clinical counselor-supervisor Bancroft; Dr. Miller; Southwoods Sleep Centers and Dr. Michael Lileas; Dr. Gruenfeld; vocational expert Burkhammer; Ms. Glover; the findings of State agency medical consultants Steve McKee, M.D. and Indria Jasti, M.D.; and the findings of State agency psychological consultants Rena Popma and Robyn Murry-Hoffman, Psy.D.

When he reviewed Dr. Gruenfeld's report, the ALJ considered the other evidence available.  (EFC No. 8, PageID #69.)  The ALJ determined that Dr. Gruenfeld's conclusions contradicted his observations and were not supported by the other evidence.  (*Id.*, PageID #68.)  Therefore, substantial evidence supports the ALJ's evaluation of Dr. Gruenfeld's opinion and his residual functional capacity determination is not erroneous.

## II.    Persuasiveness

Plaintiff argues that the ALJ failed to "articulate how persuasive they [*sic*] find all of the medical opinions and all of the prior administrative medical findings in the case record."  (EFC No. 10, PageID #938.)  When there are "many types of evidence from different sources," the ALJ is not required to articulate how he considered "each medical opinion or prior administrative medical finding from one medical source individually" in the record.  20 C.F.R. § 404.1520c(b)(1).  Instead, the ALJ may articulate how he "considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis."  *Id.*

12

The ALJ stated that Dr. McKee's findings were persuasive and were the same as Dr. Jasti's findings. (EFC No. 8, PageID #67.) Further, the ALJ stated that Dr. Murry-Hoffman's findings were mostly persuasive (*id.*, PageID #69), that Dr. Gruenfeld's medical opinion was minimally persuasive (*id.*, PageID #68), and that Dr. Popma's findings were not persuasive (*id.*). There are no other medical or administrative findings in the record. Therefore, the ALJ articulated how persuasive he found all the medical opinions and prior administrative medical findings in the case record.

## III.    Supportability and Consistency Factors

Plaintiff argues that the ALJ failed to explain "how the supportability and consistency factors were considered in the determination or decision." (EFC No. 10, PageID #938.) Supportability means "the objective medical evidence and supporting explanations presented by a medical source." 20 C.F.R. § 404.1520c(c)(1). Consistency compares the medical opinions "with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2).

The ALJ explained that the reports of both State agency medical consultants, Dr. McKee and Dr. Jasti, "provided good supportability[.]" (EFC No. 8, PageID #67.) He explained that Dr. Popma's findings had poor supportability based on available medical evidence and inconsistencies with the record. (*Id.*, PageID #68.) The ALJ explained several major issues with the supportability of Dr. Gruenfeld's opinion, including "unremarkable clinical observations" which "showed quite contradictory foundation" that "seriously undermines the remaining support" of Dr. Gruenfeld's conclusions. (*Id.*) Additionally, Dr. Gruenfeld's "vague opinion" regarding

13

Ms. Glover's "reaction to work stress" was offered "without even a modicum of explanation[,]" and, therefore, could not be considered persuasive. (*Id.*, PageID #68–69.) Further, "compounding these major issues affecting supportability, Dr. Gruenfeld's opinion is inconsistent with collateral medical evidence and the claimant's own level of daily activities." (*Id.*, PageID #69.) This analysis informed the ALJ's decision. Contrary to Plaintiff's claim, the ALJ explained how he considered the supportability and consistency factors in his decision.

## IV. Collateral Medical Evidence

Plaintiff raises three arguments regarding the ALJ's consideration of collateral medical evidence.

*First*, Plaintiff argues that "the ALJ does not explain with any specificity what the 'collateral medical evidence' undermining Dr. Gruenfeld's opinion is." (EFC No. 10, PageID #939.) However, the ALJ expressly stated that he considered "the collateral medical evidence in 2022–2023 from the claimant's psychiatrists and other mental health professionals that similarly reflect no observed signs congruent with daytime fatigue or sleepiness." (EFC No. 8, PageID #68.) Also, the ALJ stated that he examined the "collateral medical evidence in the record showing continuous treatment for symptoms of anxiety and depression through medications and counseling services." (*Id.*) The ALJ explained that the observations and records of treatment plans from mental health professionals are inconsistent with Dr. Gruenfeld's opinion. Therefore, the ALJ's level of specificity suffices to determine which information the ALJ referenced in relation to Dr. Gruenfeld's opinion.

14

*Second*, Plaintiff argues that "the ALJ does not reference any evidence from other medical and non-medical sources.  Instead, he merely asserts a vague presumption that 'collateral medical evidence' does not support Dr. Gruenfeld's opinion. Tr.36.  This is error."  (EFC No. 10, PageID #939.)  The collateral medical evidence includes information from Dr. Vinci-Khoury; nurse practitioners Paschal-Pullium and Billock; licensed professional clinical counselor-supervisor Bancroft; Dr. Miller; Southwoods Sleep Centers and Dr. Lileas; Dr. Gruenfeld; the findings of State agency medical consultants Dr. McKee and Dr. Jasti; and the findings of State agency psychological consultants Dr. Popma and Dr. Murry-Hoffman.  Non-medical evidence includes Ms. Glover's testimony, including multiple trips out of state.  (EFC No. 8, PageID #69.)  Also, the ALJ considered the testimony of vocational expert Burkhammer.

The ALJ looked for similarities among the opinions and observations of Ms. Glover's treatment team.  The ALJ found Dr. Gruenfeld's opinion to be inconsistent with opinions and observations of other professionals.  (*Id*.)  Dr. Gruenfeld's opinion is based in part on Ms. Glover's report of experiencing panic attacks.  (*Id*., PageID #63.)  No professionals reported observing Ms. Glover experience a panic attack, and some providers' notes do not even mention panic attacks.  (*Id*., PageID #62.)  Also, Dr. Gruenfeld's own observations contradicted his conclusions, which the ALJ summarized as follows:

> Ms. Glover was also alert, exhibited good concentration by her clinical
> presentation, and completed a serial-7 subtraction (100 to 2).  In sum,
> Dr. Gruenfeld's unremarkable mental status findings, reportedly in the
> midst of resuming compliance with medications (see Ex. 13F/26), are

15

simply not consistent with the rather extreme degree of presented severity of depression and anxiety symptoms, including panic attacks not documented for years or concurrently in the psychiatric treatment setting.

(*Id.*, PageID #68.) Therefore, the ALJ sufficiently referenced specific information from multiple sources to support his determination.

*Third*, Plaintiff argues that "the ALJ's bare assertion that other 'collateral medical evidence' from unnamed sources undermines Dr. Gruenfeld's opinion is not a proper consistency analysis under 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2)." (EFC No. 10, PageID #940.) Throughout his decision, the ALJ referenced specific medical providers by name. He specified what information was provided by each. When the ALJ used more than one sentence to describe a provider's observation or opinion, the source's identity is given in sufficient proximity for the reader to understand which provider made the statement. In reading the ALJ's decision, each piece of information can be attributed to its source. Therefore, the ALJ conducted a proper consistency analysis.

## CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the Commissioner's denial of Plaintiff's application for disability benefits.

**SO ORDERED.**

Dated:  March 27, 2026

 

 

 J. Philip Calabrese
United States District Judge
Northern District of Ohio